IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

MARK CARMAN, individual and
on Behalf of All Others Similarly
Situated

  Plaintiff(s),

v.           Civil Action No. 2:22-cv-00313

PORTSMOUTH REDEVELOPMENT
AND HOUSING AUTHORITY,

  Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW the Defendant Portsmouth Redevelopment and Housing Authority ("Defendant" or "PRHA"), by and through its counsel, and respectfully submit its Memorandum of Law in Support of Defendant's Motion for Partial Summary Judgment pursuant to Fed. R. Civ. 56(b) on Plaintiff Mark Carman's overtime claim against PRHA from February 22, 2022 to May 3, 2022 in the above-styled lawsuit. In support of its Partial Motion and Memorandum of law, PRHA states as follows:

### I. PRELIMINARY STATEMENT

There are two Plaintiffs who are part of this collective action: Mark Carman and Marc Gonzalez. Both Plaintiffs admit in their depositions to having received straight time pay for all hours worked when they worked as independent contractors for Defendant. Ex. 2 at 25-27, Ex. 7 at 25-26. Thus, at most, Plaintiffs are owed half time for hours worked over forty for each work-week during the time they were classified as independent contractors.

Next, partial summary judgment is proper against Plaintiff Carman because he was a salaried, exempt manager for some of the time he worked for PRHA. PRHA hired Plaintiff Carman as the full-time, salaried manager of the security department on about February 22, 2022. Mr. Carman admits receiving a bi-weekly salary for his hours worked from February 22, 2022 until his resignation on or about May 3, 2022. His job description stated it was an exempt position and it listed the general duties Plaintiff Carman was expected to perform. Because he was a salaried, exempt manager, he was exempt from overtime pay from February 2, 2022 through May 3, 2022. Thus, he is owed no overtime wages for this time period.

Alternatively, if for some reason the Court determines that Mr. Carman was not exempt, then Mr. Carman was a salaried, non-exempt employee whose damages are limited to half-time because no doubt exists that he was paid a salary for all hours he worked each week which covers straight time and he is subject to the fluctuating work week doctrine as a matter of law. Further, if Plaintiff Carman is found to be salaried, non-exempt, then he is not entitled to liquidated damages because PRHA had a good faith belief it was in compliance with the FLSA.

**II.     STATEMENT OF UNDISPUTED MATERIAL FACTS**

The following facts are undisputed, as demonstrated by documents produced in response to the parties' discovery requests, pleadings, depositions, affidavits and other controlling documents filed herewith.

1.      Edward Bland is the Executive Director of PRHA. See Declaration of Edward Bland, attached at Ex. 1, ¶¶ 1-4. As Executive Director, Mr. Bland has authority over PRHA's operations, including its department providing security serves. Id.

2.      Plaintiff Carman started providing services as a security officer as an independent contractor in June 2021 at $19 per hour which quickly increased to $20 per hour and then to $22

per hour. See Deposition Transcript of Mark Carman attached at Ex. 2, at 11-13. Plaintiff Carman recorded all of his hours worked and submitted them to PRHA for payment from June 2021 through December 2021 before he was hired as a full-time manager of security in February 2022. Id. at 25-27. He admits he was paid straight time for all of his hours worked during this time. Id.

3. Plaintiff Carman admits he was hired as a full-time salaried manager on or about February 22, 2022. Id. at 44-45 and see Ex. 3 for copy of signed offer letter; see also Ex. 1, ¶¶ 4-5. He was paid a bi-weekly salary of $1,870 or $48,620 per year. Ex. 2 at 45, 97 and see Ex. 4 for copy of salaried payroll sheets; Ex. 1, ¶ 5. This is more than minimum wage and more than the $684 per week required salary to be exempt. Ex. 1, ¶ 5. Mr. Carman knew when PRHA hired him to manage the department and according to the job description he received, it came with a guaranteed salary and benefits. Ex. 2 at 47-49 and see Ex. 5 for copy of job description. He reported to either Edward Bland or Valerie Jenkins, Director of Asset Management. Ex. 1, ¶ 4; Ex. 2 at 56-57. As manager, he made the schedules and employees of the security department reported to him, which were approximately three people. Ex. 2 at 57-59; Ex. 1, ¶ 4. He could give input into hiring, firing and disciplinary decisions, he provided guidance to the employees and he helped to create policies and procedures a. Id. at 64, 66-67; Ex. 1, ¶ 4. For example, changes to the use of force and use of weapons occurred and it was up to Plaintiff Carman to implement these changes and make sure the employees of the security department followed the new guidelines. Id. at 76-78; Ex. 1, ¶ 4. He served as the compliance officer regarding all training and licensing for the department. Ex. 2 at 76-78 and see Ex. 6 for email; Ex. 1, ¶ 4. He was also the go-to manager for PRHA for police and fire rescue calls. Ex. 2 at 102-103; Ex. 1, ¶ 4. He made sure all of PRHA's properties continued to have security patrols and he patrolled them as well. Ex. 2 at 57; Ex. 1, ¶ 4.

4. Plaintiff Carman was hired to and was expected to perform the general duties outlined in the job description attached as Ex. 5. See Ex. 1, ¶ 6. The job description which Plaintiff Carman received states explicitly that the position was exempt. Ex. 1, ¶ 6, Ex. 2 at 49, Ex. 5.

5. From February 22, 2022 through May 3, 2022, Plaintiff Carman's work hours fluctuated every week and he could only speculate about how many hours he worked. See Ex. 2 at 99-100; Ex. 1, ¶ 5. Plaintiff Carman specifically testified that he had only speculation regarding how many hours he worked per week; that he cannot prove what hours he worked and, could just go by what he recalled. Ex. 2 at 99-100.

6. PRHA specifically believed that the position for which Plaintiff Carman was hired to perform was exempt under the Fair Labor Standards Act based on its understanding of what exempt meant under the Executive exemption. Ex. 1. ¶ 6. It knew that Mr. Carman had to be paid a salary of at least $684 per week and that he must supervise the equivalent of at least two full-time employees and perform primarily managerial duties. Id. PRHA based its understanding of these requirements on a review of the Department of Labor's website and fact sheets. Id. Plaintiff Carman was expected to generally perform the duties outlined in the job description attached as Exhibit 5 to this memorandum of law in support of PRHA's motion for summary judgment. Id. This job description states that the position is exempt. Id.

7. Plaintiff Carman resigned effective May 3, 2022. Ex. 2 at 85.

### III. STANDARD FOR SUMMARY JUDGMENT

A federal court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986). A party

moving for summary judgment bears the initial burden of proving that no genuine issue of material fact exists in the case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the party moving for summary judgment satisfies this burden, the non-moving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. Id at 322-24. Such facts must be presented in the form of exhibits and sworn affidavits. Bragg v. Orthopedic Associates of Virginia, No. 2:06cv347, 2007 U.S. Dist. LEXIS 14836, *6-8 (E.D. Va. Mar. 2, 2007) (unpublished opinion) (granting summary judgment and citing Celotex, 477 U.S. 317). See also FED. R. CIV. P. 56(E)(2). Although a court will view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than show merely some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Hence, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; . . . evidence [must exist] on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## IV. LEGAL ARGUMENT

### A. Plaintiff Carman is exempt from overtime from February 22, 2022 to May 3, 2022.

Any employee who is employed in an executive, administrative, or professional capacity is generally exempt from the minimum wage and overtime requirements of sections 206 and 207 of the Fair Labor Standards Act. See 29 U.S.C. §213(a). The Department of Labor's ("Department") regulations define an exempt executive, administrative, or professional employee as "compensated on a salary basis at a rate of not less than $684.00 per week." See 29 C.F.R. § 541.600(a).

Managers who perform concurrent exempt and non-exempt duties are still generally exempt from overtime pay under the Fair Labor Standards Act. See 29 C.F.R. §541.106(a-c).

Under the Department of Labor regulations, an employee is exempt as an Executive if (a) he is compensated at a rate of least $684 per week; (2) his primary duty is management, (3) he regularly directs the work of two or more employees and (4) has the authority to hire and fire employees or his suggestions and recommendations regarding same is given particular weight. 29 C.F.R. § 541.100(a)(1-4). In this case, the only element that Plaintiff Carman may challenge is his primary duty as manager. See Statement of Undisputed Facts ("Facts") at 3-4 (proving that he was paid more than required and that he managed three full-time employees and that he had input to recommend hiring and firing, etc.). As to the question of a manager's "primary duty," there are four factors courts consider: [1] the relative importance of the exempt duties as compared with other types of duties; [2] the amount of time spent performing exempt work; [3] the employee's relative freedom from direct supervision; and [4] the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.'" *Emmons v. City of Chesapeake*, 982 F.3d 245, 251 (4th Cir. 2020) (quoting 29 C.F.R. §541.700(a)) (alterations in original).

The case of In re Family Dollar FLSA Litigation is illustrative. In that case, the Fourth Circuit considered whether a Family Dollar store manager, qualified as exempt from overtime under the FLSA. 637 F.3d 508, 510 (4th Cir. 2011). The only disputed element was whether Grace's primary duty was managing the store. Id. at 513-14. The Plaintiff argued that she spent "99% of her time" performing "nonexecutive duties" which consisted of "'manual labor.'" Id. at 514. The court concluded that, despite her nonmanagerial work, she qualified as an exempt employee under the FLSA for several reasons. Id. at 518. Most important, the court concluded that the Plaintiff concurrently performed nonmanagerial duties alongside her managerial duties because "during 100% of the time, even while doing those [nonmanagerial] jobs, she was also the

6

person responsible for running the store." Id. at 515. The court emphasized that the Plaintiff was the only managerial employee in the store, meaning that she was never able to delegate her managerial responsibilities and duties to another employee while she performed nonmanagerial work. Id. at 515-16. As to the importance of her managerial function compared to her nonmanagerial function, the court highlighted her own deposition testimony, in which she acknowledged that she, as the leader of the store's employees, was ultimately responsible for the store's profitability. Id. at 515.

    Similarly, in this case, Plaintiff Carman was ultimately responsible for the department and no other manager worked in the department and performed these managerial duties. Facts at 3-4. He performed the duties of a manager and sometimes he performed nonmanagerial duties such as patrolling the properties and performing the duties of a security guard. Id. Plaintiff Carman complains that PRHA did not let him do what he wanted to do in the department and that he changed from reporting to the Executive Director, Edward Bland, to the Director of Asset Management, Valerie Jenkins, but these alleged facts do not destroy his exemption status. Exempt managers can report to others without destroying their exemption and just because he did not have carte blanche to manage or operate the department does not mean Plaintiff Carman was non-exempt. He admits he was the manager, that three employees reported to him, that he made schedules (approved by Ms. Jenkins), the he was the compliance officer to assure the department was in compliance with licensing and certification requirements, that he was responsible for receiving fire rescue and police calls as the manager, that he received daily reports from the employees and reviewed them and that he had input into employment decisions and policies and procedures. Id. The offer letter and job description make it clear he was paid a salary to be a manager and that the position was considered exempt. Id. These admissions prove that Plaintiff

Carman was exempt as an executive and that he is not entitled to overtime from February 22, 2022 through May 3, 2022 when he was in this position. Facts at 3, 7 (showing that Plaintiff Carman was hired on February 22, 2022 and that he resigned on May 3, 2022). As such, PRHA is entitled to summary judgment that Plaintiff Carman was exempt during this time and is not owed overtime.

**B.    The fluctuating work week doctrine governs Plaintiff Carman if he is determined to be salaried, non-exempt.**

Should the Court find that Plaintiff Carman is salaried, non-exempt, then his damages are limited to "half time" rather than "time and a half" under the fluctuating work week doctrine. See 29 C.F.R. § 778.114; Roy v. County of Lexington, South Carolina, 141 F.3d 533, 547 (4th Cir. 1998). The fluctuating work week doctrine permits employers to utilize an alternative method to calculating overtime, while still complying with the FLSA requirements. Id. This method is utilized when four requirements are met: (a) the employee receives a fixed salary and the salary does not vary with the hours worked, (b) the employee's hours fluctuate (c) the employer and employee share a mutual understanding that the fixed salary remains the same, regardless of hours worked, and (d) the employee's salary is at a level where he or she does not make less than minimum wage in any given week. 29 C.F.R. § 778.114; see also, Kuntze v. Josh Enterprises, Inc., 365 F. Supp. 3d 630, 643 (E.D. Va. 2019); Roy, 141 F.3d at 546. The fifth requirement that overtime compensation be received only applies where employees are initially paid as non-exempt employees. See 29 C.F.R. § 778.114. The Department of Labor has clarified that in a situation where exempt employees are considered to have lost the exemption necessitating the retroactive payment of overtime, the fluctuating work week doctrine applies. See Retroactive Payment of Overtime and the Fluctuating Workweek Method of Payment, Wage and Hour Opinion Letter, FLSA 2009–3 (Dep't of Labor Jan. 14, 2009).

In cases where all four elements are met, the employer is not responsible for the normal overtime rate of time-and-a-half, but rather half-time. Id. Half time is calculated by dividing the number of hours worked in a work week into the amount of the employee's salary to determine the applicable hourly rate, then dividing that rate in half. Kuntze, 365 F. Supp. 3d at 643. The sum is what is owed for "overtime." Id. "The employee essentially bargained away the time-and-a-half rate he or she would have received as an hourly employee in order to receive a guaranteed [amount] per week, even if the employee works less than forty hours." Kuntze, 365 F. Supp. 3d at 644. See also Regan v. City of Charleston, S.C., 131 F. Supp. 3d 541, 547 (D.S.C. 2015).

Here, PRHA satisfies the fluctuating work week requirements. First and second, Plaintiff Carman was paid a fixed amount every pay period, i.e., a salary, and this amount did not change despite fluctuations in the hours he worked. Facts at 3-5. Next, based on his signed offer letter and his job description, Plaintiff Carman and PRHA had a mutual understanding that his salary would be paid regardless of hours worked. Id. See Wilburn v. Topgolf Int'l, Inc., No. 1:19-CV-493, 2020 WL 6937773, *2 (E.D. Va. July 21, 2020), reconsideration denied, (E.D. Va. Sept. 17, 2020) (finding mutual understanding based on the "course of conduct and the employer's policy of paying regardless of hours). Lastly, in each of Plaintiff's Carman's pay stubs, it is clear that he was making more than minimum wage each week. Facts at 3-5. Therefore, the Court should find that if he is entitled to damages, then the fluctuating work week applies.

**C.   Plaintiff Carman is not entitled to liquidated damages.**

In order to receive an award of liquidated damages, Plaintiff Carman must have been a prevailing party on the merits and such damages are calculated according to the amount of unpaid wages. Courts may refuse to award liquidated damages "[i]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had

9

reasonable grounds for believing that his act or omission was not a violation of the FLSA." Roy v. County of Lexington, South Carolina, 141 F.3d 533, 547-48 (4th Cir. 1998) (citing 29 U.S.C.A. § 260 and Lyle v Food Lion, Inc., 954 F.2d 984, 98 (4th Cir. 1992)). This is referenced as the good faith basis requirement and the burden is on the employer to establish such behavior. Mayhew v. Wells, 125 F.3d 216, 220 (4th Cir.1997). Further, although an employer may not simply remain blissfully ignorant of FLSA requirements, it need not seek an opinion letter to avoid paying liquidated damages. Roy, 141 F.3d at 548-49. Also, even in a situation where a jury finds an employer's conduct willful, the Judge can find a basis for good faith to defeat a claim of liquidated damages. Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 357 (4th Cir. 1994).

In Jordan v. GoBo, Inc., No. Civ Action No 6:09-CV-00059, 2010 WL 1816361, at *8 (W.D. Va. Apr. 30, 2010), aff'd, 393 Fed. App'x 118 (4th Cir. 2010), the defendant met the good faith requirement by showing that it meant to pay plaintiff a fixed salary, regardless of hours worked, based on the offer letter, the Plaintiff's negligence in failing to raise the issue with the employer, and the defendant's prompt payment once made aware of the alleged mistake. 2010 WL 1816461at *8. Based on this, the court stated plaintiff's claim for liquidated damages was defeated. Id.

Here, PRHA satisfies the good faith basis because during all relevant times, PRHA made it clear within its offer letter and job description that Plaintiff Carman was a manager who was salaried, with no suggestion that he would be transitioned to hourly. Facts at 3-5. Further, PRHA reviewed the Department of Labor's information about what was required for an executive management position and made sure Plaintiff Carman met these requirements. Id. at 6. Finally, the job description specifically states it is an exempt position. Id. This demonstrates that PRHA only intended to do what was lawful. Id. Based on all of the foregoing, PRHA has satisfied its

burden proving it acted in good faith and reasonably to comply with the law and, as such, the Court should grant summary judgment to PRHA and find that Plaintiff Carman is not entitled to liquidated damages.

## V. CONCLUSION

WHEREFORE, Defendant Portsmouth Redevelopment and Housing Authority requests that this Honorable Court grant its Motion for Partial Summary Judgment as stated herein, with prejudice, and award such other and further relief as the Court deems appropriate.

                                        PORTSMOUTH REDEVELOPMENT AND
                                        HOUSING AUTHORITY

                                        By: /s/ Susan Childers North

                                        Susan Childers North, Esq. (VSB #43068)
                                        Jonathan W. Gonzalez, Esq. (VSB # 92259)
                                        Gordon Rees Scully Mansukhani, LLP
                                        5425 Discovery Park Boulevard Suite 200
                                        Williamsburg, VA 23188
                                        T: 757-903-0870
                                        F: 757-401-6770
                                        snorth@grsm.com
                                        jwgonzalez@grsm.com
                                        *Counsel for Portsmouth Redevelopment and Housing Authority*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of June, 2023, I electronically filed the foregoing with the Clerk of Court via the CM/ECF System, which will send electronic notification to the following:

Sean Short, Esq.
SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, AR 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040
sean@sanfordlawfirm.com
*Counsel for Plaintiffs*

/s/ Susan Childers North
Susan Childers North, Esq. (VSB # 43068)
Gordon Rees Scully Mansukhani, LLP
5425 Discovery Park Boulevard Suite 200
Williamsburg, VA 23188
T: 757-903-0870
F: 757-401-6770
snorth@grsm.com
*Counsel for Portsmouth Redevelopment and Housing Authority*