IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| MARK CARMAN, Individually and on Behalf of All Others Similarly Situated | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| PORTSMOUTH REDEVELOPMENT AND HOUSING AUTHORITY | ) ) ) ) |
| Defendant. | ) ) |

Case No: 2:22-cv-313

## RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

As an initial matter, Plaintiff agrees that he and Opt-in Plaintiff Marc Gonzalez (collectively "Plaintiffs") are subject to the fluctuating workweek doctrine as demonstrated by Plaintiff's Supplemental Disclosures, which were served on Defendant on May 30. In the disclosures, Plaintiff submitted damages calculations to Defendant that only sought a half-time overtime premium pursuant to the fluctuating workweek calculation of overtime. *See* Pl.'s Supp. Disclosures Pursuant to R. 26(a)(1), attached as Ex. 1.

The remainder of the Defendant's Motion for Summary Judgment (ECF No. 27) must be denied because Plaintiff has presented a genuine question of material fact for every issue raised. More specifically, because Plaintiff performed no management or supervisory duties and did not offer suggestions regarding hiring, firing, promotion or demotion of employees, Defendant has not shown that no reasonable factfinder could determine that Plaintiff's job duties did not qualify him for the executive exemption to the FLSA. Further, Plaintiff has produced evidence form

Page 1 of 19
Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment

which a reasonable jury could determine that Defendant's violation of the FLSA was willful. Therefore, summary judgment is inappropriate on all of the issues raised by Defendant.

## I. DISPUTED MATERIAL FACTS

1. Paragraph 3. Disputed. Plaintiff knew from the time he was offered a salaried "management" position that the position would not entail any actual management but was intended as a formality to give him a salary plus benefits. Dep. of Mark Carman ("Dep. Carman") 48:6–11, 49:1–12, 50:2–6, attached as Ex. 2. Plaintiff was specifically instructed that his job duties would not change following the "promotion." *Id*. at 49:1–12, 50:2–6. Plaintiff did not make employee schedules, he merely reposted schedules previously set by Defendant's Human Resources representatives, nor did he approve vacation requests or schedule changes. *Id*. at 61:2–62:1, 63:6–22. Plaintiff was not responsible for ensuring his team members worked their schedules or the correct number of hours. *Id*. at 78:12–19. Although Plaintiff sat in on a few employee interviews, he never gave input into hiring or firing, nor was he asked to by management. *Id*. at 52:21–54:2. Plaintiff did not have the authority to discipline or reward team members. *Id*. at 56:8–14, 58:5–21. While Plaintiff was available for assistance if a team member encountered an unusual problem, it was only in the manner than any fellow employee could give advice rather than from a position of authority. *Id*. at 67:2–15. Other of Defendant's employees were equally available for advice, and team members were not specifically instructed to seek Plaintiff's advice or counsel prior to anyone else's. *Id*. Likewise, Plaintiff's input into policies and procedures were no more or less valuable to Defendant than any other employee's input, and his suggestions were never implemented. *Id*. at 71:20–25, 73:9–16, 75:3–11.

2. Paragraph 4. Disputed. Following his transition to a salaried position, Plaintiff was instructed that he was to perform the exact same job duties that he performed prior to that

Page 2 of 19
Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment

transition and that nothing would change in his day-to-day duties. Dep. Carman 48:6–49:12 (stating that Mr. Bland instructed to "just go keep doing what you are doing" following his transition to salary), 50:2–6 (same), 71:5–8 ("I had no teeth. And I was no different than anybody, other than he gave me [the offer letter] to try and shut me up."), 71:20–25 (stating that Plaintiff had the same input over policy changes as Defendant's janitors), 72:12–22 ("I showed up and I did my job, which was to act like a security guard."), 75:3–11 (stating that this "management" job was unlike others in that he had no authority to request resources for the department).

3. Paragraph 5. Disputed in part. Plaintiff testified that he did not have an exact recollection of the hours he worked from February 22, 2022 through May 3, 2022, but provided examples of his duties performed during that time to give rise to a reasonable inference that he regularly worked more than forty hours per week. Dep. Carman 99:7–100:9, 100:21–101:18. These duties included a regular 33-hour workweek plus other duties such as attending court or handling insurance investigations, plus emergency situations such as shootings. *Id*. at 100:23–101:18. Based on the duties described, Plaintiff estimated that he worked approximately 60 hours per week during that time. *Id*. at 104:2–3.

4. Paragraph 6. Disputed. Defendant's subjective and self-serving "belief" regarding the proper classification of Plaintiff's position as exempt is irrelevant. Moreover, Plaintiff was specifically instructed by Mr. Bland that he was to continue performing the exact same job duties and that the salaried position would have no more authority than what Plaintiff had previously. Dep. Carman 48:6–49:12 (stating that Mr. Bland instructed to "just go keep doing what you are doing" following his transition to salary), 50:2–6 (same), 71:5–8 ("I had no teeth. And I was no different than anybody, other than he gave me [the offer letter] to try and shut me up."), 71:20–

Page 3 of 19
Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment

25 (stating that Plaintiff had the same input over policy changes as Defendant's janitors), 72:12–22 ("I showed up and I did my job, which was to act like a security guard."), 75:3–11 (stating that this "management" job was unlike others in that he had no authority to request resources for the department). Finally, Defendant cannot claim ignorance that Plaintiff was not performing exempt duties because Plaintiff complained to Defendant's Board of Directors regarding the manner in which he was paid multiple times. *See* Dep. Carman 82:8–25, 83:24–84:4. *See also* Feb. 22, 2022, Email to Karen James, Edward Bland and Alisa Winston, attached as Ex. 3; Feb. 24, 2022 Email to Karen James and Edward Bland, attached as Ex. 4; May 3, 2022, Email to Bruce Lalonde, Edward Bland, Alisa Winston, Valzenia Jenkins and Karen James, attached as Ex. 5.

## II. LEGAL STANDARD

Summary judgment is proper only when "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.3d 517, 522 (4th Cir. 2002) (quoting Fed. R. Civ. P. 56(c)). "The party seeking summary judgment bears the responsibility of informing the court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact." *Vann v. King*, Civil Action No. 3:20CV897, 2021 U.S. Dist. LEXIS 203611, at *1–2 (E.D. Va. Oct. 21, 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"In evaluating a motion for summary judgment, the court views the record in the light most favorable to the nonmoving party." *Interprofessionel du Gruyere v. U.S. Dairy Exp. Council*, 61 F.4th 407, 415 (4th Cir. 2023) (citing *U.S. Search, LLC*, 300 F.3d at 522). "Viewing

Page 4 of 19
Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment

the record in this light means drawing inferences in favor of the non-moving party where the evidence as a whole would permit a rational trier of fact to do so." *Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

### III.     ARGUMENT

Defendant asserts that Plaintiff's claims fail for the time that he was paid a salary because he was properly classified as an exempt employee due to his "management" of fellow security officers, but Defendant has not met its burden to show that Plaintiff performed any managerial functions, much less that his primary duty was management. *See* Section A, *infra*. Further, Defendant's assertion that it classified Plaintiff as exempt in good faith is a non-starter. Plaintiff himself informed Defendant's agents multiple times that he was not performing exempt duties and should be paid by the hour. *See* Section B, *infra*. Accordingly, Defendant's Motion for Partial Summary Judgment must be wholly denied.

**A. The executive exemption does not apply to Plaintiff's employment.**

By mischaracterizing and decontextualizing most of Plaintiff's deposition testimony, and then blanketly ignoring the remainder, Defendant makes a vague and hand-wavy assertion that because Plaintiff was ostensibly hired as a "manager," he therefore actually functioned as a "manager." Defendant's understanding of Plaintiff's job duties, even the paper documentation of Plaintiff's job duties, are completely irrelevant to any analysis of whether Plaintiff was properly classified as exempt. The only consideration is whether the job duties Plaintiff actually

Page 5 of 19
Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment

performed qualified him for the executive exemption.[1] As further described below, Plaintiff unequivocally did not perform management duties.

1. <u>Legal Standard: Executive Exemption</u>

Under the FLSA, four requirements must be met for an employer to claim the executive exemption. Under 29 C.F.R. § 541.100, the term "employee employed in a bona fide executive capacity" means any employee:

> (1) Compensated on a salary basis at a rate of not less than $684 per week […], exclusive of board, lodging or other facilities; (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) Who customarily and regularly directs the work of two or more other employees; and (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

The regulations define "primary duty" as the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a).

With respect to the second requirement, an employee's "primary duty" is "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id*. The regulations provide a non-exhaustive list of factors to consider when determining an employee's primary duty:

> [T]he relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages

---

[1] *See Justice v. Metro. Gov't*, 4 F.3d 1387, 1392 (6th Cir. 1993) (citing *Overstreet v. N. Shore Corp.*, 318 U.S. 125, 132 (1943); *Carlson v. Minneapolis*, 925 F.2d 264, 265 (8th Cir. 1991)).

Page 6 of 19
Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment

> paid to other employees for the kind of nonexempt work performed by the employee.

*Id*. To qualify for the executive exemption, an employee's primary duty must be "management of the enterprise . . . or of a customarily recognized department or subdivision thereof." 29 C.F.R. § 541.100. The regulations state that:

> "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

The fourth requirement of the executive exemption requires that the employee take or recommend actions that constitute a "change in status." The DOL interprets the phrase "other change in status" as a "tangible employment action," meaning "a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing *significant* change in benefits."[2]

To assist with the analysis, the regulations identify the following non-exclusive factors for consideration: whether it is part of the employee's job duties to make such suggestions and

---

[2] DOL Field Operations Handbook (FOH) § 22b03 (emphasis added); 69 Fed. Reg. 22,131 (Apr. 23, 2004) (stating the DOL's intent that "change of status" be given the same meaning as "tangible employment action" under Title VII); *Pennsylvania State Police v. Suders*, 542 U.S. 129, 144 (2004) (defining "tangible employment action" under Title VII).

Page 7 of 19
Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment

recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. 29 C.F.R. § 541.105. Occasional suggestions and recommendations are not enough. *Id*. It is also insufficient for Defendant to make conclusory allegations—<u>Defendant must prove with real evidence</u> that Plaintiff fulfilled the requirements of the fourth prong of the executive exemption.[3]

2. <u>Plaintiff's job did not qualify for the executive exemption.</u>

In its Memorandum of Law in Support of Defendant's Motion for Partial Summary Judgment, Defendant makes the bold assertion that "the only element that Plaintiff Carman may challenge is his primary duty as manager." Mem. of Law in Supp. of Def.'s Mot. for Partial Summ. J. ("Mot. for Summ. J."), ECF No. 27, p. 6. Plaintiff certainly did not meet the requirements of the first prong of the executive exemption, but also he neither directed the work of two or more employees nor had any say in any other employees' "change of status." Thus, the only requirement for application of the executive exemption unequivocally met is the first prong. Because Defendant must prove that no genuine issue of material fact exists regarding all four prongs of the executive exemption, its request for summary judgment must fail.

    *i. Plaintiff's primary duty was not management.*

When Plaintiff transitioned into a salaried position, he was provided with an offer letter that described his position as a "Management Officer" and outlined his salary and duties. *See* Offer Letter, ECF No. 27-3. Coupled with a job description for a "Security Programs Manager," which Defendant apparently assumes the Court will presume is the same position despite the title

---

[3] *See Joon Young Chul Kim v. Capital Dental Tech. Lab., Inc.*, 279 F. Supp. 3d 765, 777 (N.D. Ill. 2017) ("Because [defendants] fail to put forth evidence demonstrating that [plaintiffs] played a role in hiring and firing decisions, defendants have not met this burden."); *See also Ale v. TVA*, 269 F.3d 680, 691 (6th Cir. 2001) ("The words 'in charge' are not a magical incantation that render an employee a bona fide executive regardless of his actual duties.").

Page 8 of 19
Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment

discrepancy, Defendant relies heavily on this Letter as an indication that Plaintiff's primary function was to manage Defendant's security team. *See* Mot. for Summ. J., p. 7. But as stated above, titles are transitory and not indicative of exempt status. *Justice*, 4 F.3d at 1392 (citing *Overstreet*, 318 U.S. at 132 (1943); *Carlson*, 925 F.2d at 265). Regardless, Plaintiff's testimony provides much needed context to the Offer Letter. As a result of Plaintiff's need for a full-time position with benefits, Defendant hired Plaintiff and presented him with the Offer Letter with the explanation that nothing about his day-to-day job duties would change. Dep. Carman 48:6–49:12 (stating that Mr. Bland instructed to "just go keep doing what you are doing" following his transition to salary), 50:2–6 (same).

After assuming the "management" position, Plaintiff performed the exact same duties he performed as part of the security team. Dep. Carman 72:12–22 ("I showed up and I did my job, which was to act like a security guard."). Plaintiff's duties had very little to do with "management" as defined by the Regulations. He did not make employee work schedules, approve vacation time or schedule changes, nor did he enforce Defendant's 33-hour workweek policy. *Id*. at 61:2–62:1, 63:6–22, 78:12–19. Plaintiff sat in on a few employee interviews, but he did not participate in hiring discussions, nor did he train new hires. *Id*. at 52:21–54:2. *See also id*. at 34:1–35:5 (describing Defendant's process for training new hires); 58:22–59:8 (describing Defendant's process for "training" managers, which was merely providing an employee handbook to read and sign).

Plaintiff had no authority to discipline team members, nor was his input sought regarding raises or promotions. *Id*. at 56:8–14, 58:5–21. Further, while Plaintiff was available for assistance if a team member encountered an unusual problem, it was only in the manner that any fellow employee could give advice rather than from a position of authority. *Id*. at 67:2–15. Other

Page 9 of 19
Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment

of Defendant's employees were equally available for advice, and team members were not specifically instructed to seek Plaintiff's advice or counsel prior to anyone else's. *Id*. Likewise, Plaintiff's input into policies and procedures were no more or less valuable to Defendant than any other employee's input, and his suggestions were never implemented. *Id*. at 71:20–25, 73:9–16, 75:3–11. Nor was Plaintiff permitted to request resources for the security department. *Id*. at 75:3–11.

In scraping Plaintiff's deposition for any possible semblance of management authority, Defendant claims that Plaintiff "admitted" that he was the "compliance officer" that ensured the department had its licensures and certifications in order, but that was not Plaintiff's testimony. When asked if he was in charge of compliance, Plaintiff responded "That's what I had in mind at this time." Dep. Carman 77:12–16. Just prior to this question, Plaintiff had described his frustration with the lack of authority he was allowed in his position and his "defeat" concerning his misimpression of the duties he would be performing. *See id*. at 75:3–25. Based on this context, it's obvious that Plaintiff's "admission" was simply more frustration that he believed he should have been auditing licensure compliance but was not permitted to do so.

Defendant next claims that Plaintiff was the first to receive calls from the fire and police departments during emergencies affecting Defendant's properties but offers no explanation for how being the first to receive a call is a duty of management. Defendant offers no evidence that simply receiving a call resulted in any management duties. Plaintiff's testimony was that when he received those calls, he responded. *See* Dep. Carman 59:11–14, 99:22–25. This is not a management task; it's simply more general security officer work. Further, Plaintiff likely received the calls because of his experience in law enforcement rather than any inherent

Page 10 of 19
Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment

authority as "manager." *See* Dep. Carman 17:5–14 (describing Plaintiff's work history as a police officer).

Defendant next mischaracterizes Plaintiff's deposition with respect to his "review" of the security team's end-of-the-day reports. Plaintiff's sole duty as "manager" with respect to the daily reports was to pass them on to upper management. Dep. Carman 65:23–66:6 (stating that the team submitted the reports to Plaintiff and "I would look at them."). Finally, the "input in decisions" that Defendant claims Plaintiff had was merely to communicate policy changes dictated by Mr. Bland to the rest of the team. *Id*. at 76:15–77:3. Plaintiff had no input into the policy changes themselves. *Id*. at 69:6–14, 71:20–25. Accordingly, Defendant has not provided a single example of Plaintiff's management duties as defined by the Regulations, much less that those duties were his primary duty.

Plaintiff estimates that he worked 60 hours per week in performing security services; his questionable management duties of communicating policies to the team and handing in daily reports could have taken up to one hour per week, and that's a generous estimation. Plaintiff was not free from direct supervision; human resources set the schedules and Mr. Bland set the policies. Dep. Carman 61:18 –62:1, 76:15–77:3. And finally, Plaintiff's salary was lower than what he received as a member of the team. Id. at 51:8–50:6 (stating that Plaintiff's salary was a pay cut of "several thousand dollars a year based on what I had been making at an hourly rate."). Thus, even if Plaintiff performed some management duties, those were certainly not his primary duty.

Defendant relies heavily on the Fourth Circuit's holding in *Grace v. Family Dollar Stores, Inc.* (*In re Family Dollar FLSA Litigation*), but in *Family Dollar*, the defendant was able to demonstrate that the plaintiff performed exempt duties (such as managing employee schedules

**Page 11 of 19**
**Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority**
**U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313**
**Response to Defendant's Motion for Partial Summary Judgment**

and ensuring customer satisfaction) and nonexempt duties (such as running a cash register and stocking shelves) concurrently, resulting in effective proof that the plaintiff spent almost all her time in management activities. 637 F.3d 508, 516 (4th Cir. 2011). Here, Plaintiff's nonexempt job duties of providing security services to Defendant's properties could not be performed concurrently with any theoretical management duties. The management duties cited by Defendant must necessarily be performed at a desk and his nonmanagement duties must necessarily be performed away from the office. Plaintiff may have occasionally been able to field questions or offer advice to a team member during a quiet moment while on duty but would have to drop everything in the event of an emergency. In short, Family Dollar is inapposite because performing security services is fundamentally different than managing a retail establishment. See *In re Family Dollar FLSA Litigation*, 637 F.3d at 518 (noting that exempt status should be determined on an individual basis and a court's holding could vary even among managers of different stores from the same chain).

    ii.  *Plaintiff did not direct the work of two or more employees.*

Aside from its own self-serving affidavit and the presumption that Plaintiff's "manager" title included management duties, Defendant has offered no evidence that Plaintiff was responsible for the supervision or direction of his fellow team members. According to Plaintiff, the team needed little to no direction in performing their duties. Dep. Carman 65:14–66:10. The team was in place before Plaintiff moved into the salaried position and continued performing the same duties after his transition of position. *Id*. at 54:3–14. Plaintiff did not make the team schedules, he did not tell the team where or how to patrol, and he did not do performance reviews for the team. *Id*. at 61:2–62:19 (stating that Valerie Jenkins approved time-off requests and made the schedule), 63:6–22 (stating that the team worked out necessary schedule changes

Page 12 of 19
Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment

between themselves without his input), 65:18–21 (stating that the team knew what to do without direction), 58:5–21 (stating that Plaintiff never disciplined or rewarded the team). As stated above, although it is Defendant's burden to prove that there is no genuine issue of fact regarding any of the requirements of the executive exemption, Defendant has offered no evidence regarding Plaintiff's supervision or direction of the security team. The conclusory allegations contained in Edward Bland's declaration (ECF No. 27-1) are insufficient, particularly as those allegations are directly contradicted by Plaintiff's sworn deposition testimony. See Dep. Carman 56:8–14, 58:5–21, 61:2–62:19, 63:6–22, 65:18–21, 75:3–11.

      *iii. Plaintiff had no input in other employees' "change of status."*

Defendant cannot meet its burden to show Plaintiff was properly classified as an exempt executive based on the conclusory allegation that Plaintiff *could have* provided input into hiring or firing decisions. Rather, Defendant must show not only that Plaintiff *did* provide input, but also that it was acted upon, regardless of whether that act was in favor of the input or against it. 29 C.F.R. § 541.105. Defendant has not shown that a) Plaintiff ever offered input regarding a team member's change of status, b) that Defendant ever sought Plaintiff's input regarding a team member's change of status, or c) that Defendant ever acted upon Plaintiff's input regarding a team member's change of status.

      Plaintiff did not have the authority to hire security guards. Dep. Carman 52:21–53:11. Although Plaintiff sat in a few interviews, he never once recommended anyone for employment. *Id*. at 53:12–54:2. Plaintiff did not have the authority to discipline security guards or recommend them for termination. *Id*. at 56:8–14. Even if, as Defendant claims, Plaintiff technically had that authority based on his job title, Plaintiff never actually did so. *Id*. at 58:5–8. Plaintiff never recommended anyone for a promotion or pay raise. *Id*. at 58:9–16. In fact, when asked how it

Page 13 of 19
Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment

was determined whether a team member should receive a raise, Plaintiff responded "It never came up. I wouldn't have any idea." *Id*. at 58:17–21.

In evaluating whether Plaintiff's suggestions and recommendations as to the hiring, firing, promotion or demotion of other employees were given "particular weight," courts consider "whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. Here, while these suggestions and recommendations may have arguably been part of Plaintiff's technical job duties, Plaintiff never once made a change-of-status suggestion or recommendation, and those nonexistent suggestions were therefore never relied on by Defendant. Thus, Plaintiff's nonexistent input into hiring, firing, promotion or demotion of other employees was given no weight whatsoever.

Plaintiff does not dispute that he met the salary basis test under the first requirement of the executive exemption. But Defendant has failed to show that no genuine issue of material fact exists as to the remaining three requirements. Plaintiff performed almost no management duties whatsoever, instead spending his time performing the same nonexempt duties he performed before transitioning into a salaried position. Dep. Carman 72:12–24. Regardless, even if he performed some exempt duties while salaried, in no way were these duties his primary duty. *Id*. at 71:20–25. Further, Plaintiff did not direct the security team as someone else made the schedule and all other guards were familiar with their duties. *Id*. at 61:2–62:19, 63:6–22, 65:18–21. And finally, Plaintiff did not offer input into hiring, firing, promotion or demotion of other employees and thus his input was not given any particular weight. *Id*. at 52:21–54:2, 56:8–14, 58:5–21. Defendant has not met its burden to show that the Plaintiff was properly classified as an exempt

Page 14 of 19
Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment

executive during his time as a salaried employee and its request for summary judgment regarding application of the exemption must be denied.

   B. **Plaintiff has raised a genuine issue of material fact with respect to the issue of willfulness.**

As with its request for summary judgment regarding the executive exemption, Defendant's request for summary judgment on the issue of willfulness must be denied. First, a determination of the issue of willfulness is inappropriate where liability has not yet been established. *See* Section 2, *infra*. Second, Plaintiff has identified evidence from which a reasonable jury could determine that Defendant's violation of the FLSA was willful. *See* Section 3, *infra*.

   1. Legal Standard: Willfulness under the FLSA.

A three-year rather than two-year statute of limitations applies under the FLSA when the conduct of the employer is willful. *See* 29 U.S.C. § 255. A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128 (1988). "Reckless disregard of the requirements of the [FLSA]" includes a "failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]." 5 C.F.R. § 551.104. While willfulness requires more than mere negligence or a good faith, but erroneous, assumption that a pay plan complied with the FLSA, an employer cannot simply bury its head in the sand, failing to adequately investigate the requirements of the FLSA, and still rely on a claim of a good faith belief that its conduct complied with the FLSA. *Richland Shoe*, 486 U.S. at 138; *Mumby v. Pure Energy Servs.*, 636 F.3d 1266, 1270 (10th Cir. 2011). An employer may commit a willful violation where the employer disregards "the very '*possibility*' that it was violating the statute." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 903–909  (9th Cir. 2003) (emphasis added).

Page 15 of 19
Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment

2. <u>Willfulness is not an appropriate determination on summary judgment.</u>

Courts recognize that it is generally inappropriate to reach a determination regarding willfulness where the employer's liability for violating the FLSA has not first been established. *See, e.g.*, *Brown v. Pine Bluff Sch. Dist.*, No. 5:18-cv-04-JLH, 2019 U.S. Dist. LEXIS 596, at *6 (E.D. Ark. Jan. 3, 2019) ("The question of willfulness is for the jury."); *Brantley v. Ferrell Elec., Inc.*, 112 F. Supp. 3d 1348, 1377 (S.D. Ga. 2015) ("The Court cannot make a determination on the issue of willfulness until the issue of Defendants' violation of the FLSA is determined."); *Alshehabi v. Hymans Seafood Co.*, No. 2:14-cv-2724-PMD, 2016 U.S. Dist. LEXIS 85177, at *6-8 (D.S.C. June 30, 2016) ("This Court has previously ruled it is inappropriate to determine willfulness where liability has not yet been determined."); *Saunders v. Ace Mortg. Funding, Inc.*, No. 05-1437(DWF/SRN), 2007 U.S. Dist. LEXIS 28384, at *31 & *34 (D. Minn. Apr. 16, 2007) (denying cross-motions for summary judgment on willfulness and good faith because "liability is a predicate to a willfulness analysis and to a finding of liquidated damages" and because "a jury's factual determinations concerning willfulness are relevant to the issue of whether the Court should award liquidated damages.").

No substantive liability has yet been established in this case, making the issue of willfulness inappropriate for determination on summary judgment. Therefore, Defendant's request for summary judgment should be denied on this basis alone.

3. <u>Plaintiff has provided evidence that Defendant's conduct was willful.</u>

Here, Defendant was clearly aware of the minimum wage and overtime provisions of the FLSA. However, Defendant claims that there is no evidence that its violation was willful, ironically relying on *Jordan v. Gobo, Inc.*, No. 6:09-cv-00059, 2010 U.S. Dist. LEXIS 42778 (W.D. Va. Apr. 30, 2010). In *Jordan*, as Defendant notes in its Memorandum, the plaintiff

Page 16 of 19
Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment

received an offer letter stating that the plaintiff was to receive a fixed salary regardless of the number of hours he worked, indicating the employer's intent to pay the plaintiff on a salary basis. 2010 U.S. Dist. LEXIS 42778, at *25. Defendant's analysis stops here. According to Defendant, the mere fact that Plaintiff received an Offer Letter stating that he was to be paid a salary is sufficient proof that Defendant acted in good faith. *See generally*, Mem. in Supp. of Mot. for Summ. J., p. 10.

Defendant's analysis is insufficient because *Jordan* is inapplicable for two reasons. First, the *Jordan* plaintiff "failed to bring the oversight to Defendant's attention" until he sent the defendant a demand letter. 2010 U.S. Dist. LEXIS 42778, at *25. Here, Plaintiff notified what is presumably the entirety of Defendant's upper management team on multiple occasions, including within days of shifting to a salaried position, that he was improperly classified as exempt. *See* Dep. Carman 82:8–25, 83:24–84:4. *See also* Feb. 22, 2022, Email to Karen James, Edward Bland and Alisa Winston, attached as Ex. 3; Feb. 24, 2022, Email to Karen James and Edward Bland, attached as Ex. 4; May 3, 2022, Email to Bruce Lalonde, Edward Bland, Alisa Winston, Valzenia Jenkins and Karen James, attached as Ex. 5. Moreover, Plaintiff has provided evidence that the Offer Letter was a sham—Mr. Bland specifically informed Plaintiff that the Offer Letter was meaningless and that Plaintiff was to simply continue performing his duties as he had prior to receiving a salary. Dep. Carman 48:6–49:12, 50:2–6. Second, upon receiving notice that it had inadvertently underpaid the plaintiff, the Jordan defendant "promptly paid the amount due to Plaintiff." 2010 U.S. Dist. LEXIS 42778, at *25. Defendant has made no such good faith showing here.[4]

---

[4] *Jordan* was premised under the first requirement of the executive exemption outlined in Section A, *supra*. 2010 U.S. Dist. LEXIS 42778, at *21. The defendant inadvertently paid the plaintiff a salary that did not meet the minimum $455 weekly income, and immediately paid the balance upon receiving notice of the underpayment. *Id*.

Page 17 of 19
Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment

Defendant argues that it could only have acted in good faith when classifying Plaintiff because it "reviewed the Department of Labor's information about what was required for an executive management position and made sure Plaintiff Carman met these requirements." Mem. in Supp. of Mot. for Summ. J., p. 10. But within a few days of Plaintiff's hire into the management position, Plaintiff had informed multiple officers for Defendant that he was not performing exempt duties and should be paid an hourly rate. *See* Exs. 3–4. At the absolute best, Defendant was fully aware that Plaintiff was operating under a misconception as to what his job duties entailed and should have taken steps to ensure that Plaintiff was performing the exempt duties Defendant asserts were commiserate with his position. But Defendant didn't. Defendant simply allowed Plaintiff to continue performing nonexempt duties and denied him overtime for his extra work. This reckless disregard for ensuring that Plaintiff was properly classified based on unquestionable evidence is sufficient to show Defendant's willfulness. See *Chao v. Self Pride, Inc.*, 232 F. App'x 280, 287 (4th Cir. 2007) (stating that an employer may form the willful state "either by choosing to remain ignorant of legal requirements or by learning of those requirements and disobeying them.") (citing *Dole v. Elliott Travel & Tours*, 942 F.2d at 966–67 (6th Cir. 1991)).

This is not a case in which the employer violated the FLSA, but appeared to sincerely believe that the illegal policy was compliant with the FLSA. Despite Defendant's DOL information review, it was presented with unquestionable, first-hand evidence that Plaintiff was not performing exempt duties, and yet chose to ignore that evidence. Because Defendant had knowledge that Plaintiff was not performing exempt duties, a reasonable jury could find that Defendant's violation of the FLSA was willful, or at least made in reckless disregard of the

Page 18 of 19
Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment

provisions of the FLSA. Therefore, Defendant's request for summary judgment on the issue of willfulness must be denied.

                Respectfully submitted,

                **MARK CARMAN, Individually**
                **and on Behalf of All Others**
                **Similarly Situated, PLAINTIFF**

                */s/ Krista Sheets*
                Krista Sheets
                Vir. Bar No. 97730
                SANFORD LAW FIRM, PLLC
                Kirkpatrick Plaza
                10800 Financial Centre Pkwy, Suite 510
                Little Rock, Arkansas 72211
                Telephone: (501) 221-0088
                Facsimile: (888) 787-2040
                krista@sanfordlawfirm.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this date I caused a true and accurate copy of the foregoing to be electronically filed with the Clerk of Court for the United States District Court for the Eastern District of Virginia using the CM/ECF system, which will send electronic notification of such filing to all counsel of record, including the following:

Susan Childers North, Esq.
Jonathan W. Gonzalez, Esq.
Gordon Rees Scully Mansukhani, LLP
5425 Discovery Park Boulevard, Suite 200
Williamsburg, Virginia 23188
Telephone: (757) 903-0870
Facsimile: (757) 401-6770
snorth@grsm.com
jwgonzalez@grsm.com

                */s/ Krista Sheets*
                **Krista Sheets**

Page 19 of 19
**Mark Carman, et al. v. Portsmouth Redevelopment and Housing Authority**
U.S.D.C. (E.D. Virginia.) Case No. 2:22-cv-313
Response to Defendant's Motion for Partial Summary Judgment