## Mark Carman

| | |
|---|---|
| **From:** | Mark Carman |
| **Sent:** | Tuesday, February 22, 2022 10:28 AM |
| **To:** | Karen James; Edward Bland; Alisa Winston |
| **Subject:** | Re: Misclassification of Worker Status |

Since it appears that you have elected not to respond to my email letter pertaining to Misclassification of Worker, I am now writing to;

A) Memorialize my correspondence with you regarding my complaint about Misclassification of Employment.

B) Notify you that as of today I will begin the process of formalizing my complaint to;
- The Internal Revenue Service
- The US Department of Labor
- The Virginia Department of Labor and Industry.
- The Virginia Attorney General's task force on worker rights, particularly, Misclassification.

C) Notify you that I will be filing an independent action with the courts against PRHA seeking every remedy available to me. Furthermore, I will be inviting others who have also been misclassified by PRHA about my action and and invite them to join.

D) I reaffirm my rights as a Whistle Blower and remind you that it is a violation of Virginia and Federal law to retaliate against me in any way.

E) I will be filing IRS Form 3949-A, Information Referral to report your failure to withhold federal taxes.

F) I will be filing IRS FORM SS-8, Determination of Worker Status for Purposes of Federal Employment Taxes and Income Tax Withholding.

As I related in my initial letter, it is my desire to revolve this matter litigation or formal process. However, since it appears that you have chosen to ignore my complaint, I am left with no option but to proceed with formal action.

Respectfully,

Mark Carman



Mark Carman
PRHA Security and Risk Management
Office (757) 391-2963
Cell (757) 746-2617

1

**From:** Mark Carman
**Sent:** Friday, February 11, 2022 6:45:49 PM
**To:** 71wyoming@gmail.com <71wyoming@gmail.com>
**Subject:** FW: Misclassification of Worker Status

Regards,

Mark Carman
Security Programs & Risk Management Officer
Portsmouth Redevelopment and Housing Authority
3116 South Street, Portsmouth, VA 23707
C. 757-746-2617
www.prha.org
mcarman@prha.org



**From:** Mark Carman
**Sent:** Friday, February 11, 2022 5:15 PM
**To:** Alisa Winston <Awinston@prha.org>
**Subject:** Misclassification of Worker Status

Please find the following, addressing my concerns regarding my status with PRHA.

### SECTION I - STATEMENT OF FACTS

On June 6, 2021, I began to work as a part-time Security Officer for Portsmouth Redevelopment and Housing Authority. I was required to turn in a timesheet and was compensated at an hourly rate, paid every two weeks by direct deposit to my personal checking account. When I started with PRHA, my full-time employment was as a sergeant with the Virginia Department of Corrections. My supervisor at PRHA was Security and Risk Management Officer, Keyond Gorley. He established the methods and means for all the work being performed and provided direct supervision. Gorley established the work schedule and submitted pay sheets for the hours I worked.

In July of 2021, I received notice that I had received a promotion to the rank of Lieutenant with the Department of Corrections. The promotion included a transfer to a location approximately 65 miles away. In view thereof, I determined that it would be difficult for me to continue working part-time for PRHA because of time constraints. I informed Gorley that I would likely need to stop working at PRHA. Gorley told me that he could arrange to have me hired full-time, with benefits, working for PRHA. That way I could continue making contributions to my retirement account with Virginia Retirement System.

In early August of 2021, I had a conversation with PRHA Executive Director, Edward Bland, wherein he discussed with me the idea of having me come on board as a full-time employee. Bland went so far as to tell me that he could possibly put

me in under one of the vacant maintenance workers spots. He stated, "We'll do something, and put you on starting September." Based on that conversation, on August 19, 2021, I resigned from my position at the Virginia Department of Corrections to work full-time for PRHA.

Toward the end of August 2021, Keyond Gorley resigned from PRHA. Marc Gonzalez then took over the position as Security and Risk Management Officer for PRHA. Marc Gonzalez and I had a meeting with Edward Bland wherein the proposition of me becoming a full-time PRHA employee was again discussed. This time Bland stated that he would look into it and get back to me. He further stated, "It might make more sense to do it after the first of the year."

In January 2022, Marc Gonzalez resigned from PRHA. Edward Bland told me that I would be "acting" Security and Risk Manager, supervising all security staff. He gave me detailed instructions as to methods, means, hours of operation, and other directives regarding the operational details of the in-house security department. He provided me with a cellphone, office, computer, laptop computer, vehicle, and other tools necessary to perform the duties. At that meeting, I asked Bland about going on the payroll, with benefits, to which he replied, "I will have to run the numbers and get back with you."

I have maintained an ongoing relationship with PRHA, performing my duties, submitting reports, managing other employees, etc. However, as of this writing, I am not on the official PRHA payroll. I have conducted some research and have found that under Virginia Law, I am entitled to relief in this matter. After months of waiting, and the matter being endlessly deferred, I hereby assert that I have been misclassified as a non-employee and that PRHA is in violation of **§ 40.1-28.7:7, Code of Virginia.**

### SECTION II – MISCLASSIFICATION

**What is employee misclassification?** Employee misclassification occurs when an employer characterizes its relationship with a worker as an independent contractor, while the nature of his or her work relationship qualifies as an employer-employee arrangement. If it is determined that an employer has incorrectly classified a worker as an independent contractor instead of an employee, it can face serious employee misclassification penalties from the tax authorities, the governments, and the legal system if the worker sued the company for misclassification.

**Why does employee misclassification occur?** In some instances, employers deliberately misclassify employees to avoid paying for employee benefits and taxes. These cases, when uncovered, will incur the most severe employee misclassification penalties. Agencies that have misclassified employees and therefore violated the Fair Labor Standards Act's (FLSA) guarantees for minimum wage, overtime, and other protections, are liable for criminal penalties and back wages. The cost of damages and attorney's fees can be equally as high.

Carman000003

According to the **Code of Virginia, § 40.1-28.7:7,** *"an individual who has not been properly classified as an employee may bring a civil action for damages against his employer for failing to properly classify the employee if the employer had knowledge of the individual's misclassification. An individual's representative may bring the action on behalf of the individual. If the court finds that the employer has not properly classified the individual as an employee, the court may award the individual damages in the amount of any wages, salary, employment benefits, including expenses incurred by the employee that would otherwise have been covered by insurance, or other compensation lost to the individual, a reasonable attorney fee, and the costs incurred by the individual in bringing the action."*

The above-referenced code, in section "B", further states, *"An individual who performs services for a person for remuneration shall be presumed to be an employee of the person that paid such remuneration, and the person that paid such remuneration shall be presumed to be the employer of the individual who was paid for performing the services unless it is shown that the individual is an independent contractor as determined under the Internal Revenue Service guidelines."*

According to the **Code of Virginia, § 60.2-212,** "Employment" means:

1. Any service including service in interstate commerce, performed for remuneration or under any contract of hire, written or oral, express or implied; and
2. Any service, of whatever nature, performed by an individual for an employing unit, for remuneration or under any contract of hire, written or oral, and irrespective of citizenship or

In Paragraph "C" of **§ 60.2-212,** it states, "Services performed by an individual for remuneration shall be deemed to be employment subject to this title unless the Commission determines that such individual is not an employee for purposes of the Federal Insurance Contributions Act and the Federal Unemployment Tax Act, based upon an application of the standard used by the Internal Revenue Service for such determinations."

**What Is Remuneration?** Remuneration is the total compensation received by an employee. It includes not only base salary but any bonuses, commission payments, overtime pay, or other financial benefits that an employee receives from an employer.

An individual is an employee for federal employment tax purposes if the individual has the status of an employee under the usual common-law rules applicable in determining the employer-employee relationship. Guides for determining that status are found in the following three substantially similar sections of the Employment Tax Regulations: **sections 31.3121(d)-1(c); 31.3306(i)- 1; and 31.3401(c)-**

Following the common law standard, the employment tax regulations provide that a person for whom the services are performed is a common law employer if the person has the right to direct and control the worker who performs the services **(see Regs. Secs. 31.3121(d)-1(c), 31.3306(i)-1(b),** and **31.3401(c)-**To help determine whether a worker is an employee under the common law rules, the IRS identified 20 factors that may indicate whether the employer can exercise enough control to establish an employer-employee relationship. These factors, set forth in Revenue Ruling 87-

4

41, were based on the circumstances that the courts identified and relied upon to decide whether an employment relationship existed. Not all the factors must be present to find an employee/employment relationship.

**(1) Instructions.** An employee must comply with instructions about when, where and how to work. The control factor is present if the employer has the right to require compliance with the instructions. – *Since the implementation of the in-house security program, PRHA security officers have been directed and controlled by an employee of the PRHA. Initially, the officers were directed by Security and Risk Management Officer, Keyond Gorley. Upon Gorley's resignation, August 31, 2021, PRHA Executive Director, Edward Bland, assumed the role of supervision and direction of the PRHA security officers.*

**(2) Training.** An employee receives ongoing training from, or at the direction of, the employer. Independent contractors use their own methods and receive no training from the purchasers of their services. – *NA*

**(3) Integration.** An employee's services are integrated into the business operations because the services are important to the business. This shows that the worker is subject to the direction and control of the employer. - *PRHA security officers have been integrated in the day-to-day operations of PRHA. The in-house security program is discussed at the PRHA's board meetings, the officers are regularly called upon by property managers for welfare checks, inspections, investigations, etc.*

**(4) Services rendered personally.** If the services must be rendered personally, presumably the employer is interested in the methods used to accomplish the work as well as the end results. An employee often does not have the ability to assign their work to other employees, an independent contractor may assign the work to others. – *PRHA security officers must be interviewed and approved by Executive Director, Edward Bland before they are approved to work. They do not have the right to substitute or sub-contract. Their service is not transferable and must be performed personally.*

**(5) Hiring, supervising, and paying assistants.** If an employer hires, supervises, and pays assistants, the worker is generally categorized as an employee. An independent contractor hires, supervises, and pays assistants under a contract that requires him or her to provide materials and labor and to be responsible only for the result. – *As stated in paragraph (5), PRHA security officers must be interviewed and approved by Executive Director, Edward Bland before they are approved to work. He and he alone makes the decision as to who will supervise PRHA security officers.*

**(6) Continuing relationship.** A continuing relationship between the worker and the employer indicates that an employer-employee relationship exists. The IRS has found that a continuing relationship may exist where work is

5

Carman000005

performed at frequently recurring intervals, even if the intervals are irregular. – *PRHA security officers have had an ongoing, uninterrupted relationship with PRHA since the program started in June of 2021.*

**(7) Set hours of work.** A worker who has set hours of work established by an employer is generally an employee. An independent contractor sets his/her own schedule. – *PRHA security officers have set working hours, established and monitored by Edward Bland.*

**(8) Full time required.** An employee normally works full-time for an employer. An independent contractor is free to work when and for whom he or she chooses. *PRHA Security officers work more than 40 hours per week for PRHA. PRHA is their primary employment and main source of income.*

**(9) Work done on-premises.** Work performed on the premises of the employer for whom the services are performed suggests employer control, and therefore, the worker may be an employee. Independent Contractors may perform the work wherever they desire as long as the contract requirements are performed. – *PRHA security officers must perform their services on PRHA owned, managed, or controlled properties.*

**(10) Order or sequence set.** A worker who must perform services in the order or sequence set by an employer is generally an employee. Independent Contractor performs the work in whatever order or sequence they may desire.

**(11) Oral or written reports.** A requirement that the worker submits regular or written reports to the employer indicates a degree of control by the employer. – *PRHA security officers are required to submit shift reports, monthly reports and incident reports to PRHA management staff.*

**(12) Payments by the hour, week, or month.** Payments by the hour, week, or month generally point to an employer-employee relationship. – *PRHA officers are compensated by PRHA every two weeks, based on an hourly rate for each individual. They are compensated directly and individually by PRHA via an ACH deposit.*

**(13) Payment of expenses.** If the employer ordinarily pays the worker's business and/or travel expenses, the worker is ordinarily an employee. – *PRHA pays the operating expenses for the in-house security program. Expenses include office, fuel, office supplies, utilities, etc.*

**(14) Furnishing of tools and materials.** If the employer furnishes significant tools, materials, and other equipment by an employer, the worker is generally an employee. – *PRHA provides security officers with an*

6

*office, desks, chairs, automobiles, fuel, paper supplies, computers, printers, internet service, cellphones, and other equipment.*

**(15) Significant investment.** If a worker has a significant investment in the facilities where the worker performs services, the worker may be an independent contractor. – *PRHA security officers have no investment in PRHA.*

**(16) Profit or loss.** If the worker can make a profit or suffer a loss, the worker may be an independent contractor. Employees are typically paid for their time and labor and have no liability for business expenses. - *PRHA security officers are paid on an hourly basis. They have no risk of loss or opportunity to earn profits based on their work.*

**(17) Working for more than one firm at a time.** If a worker performs services for multiple unrelated firms at the same time, the worker may be an independent contractor. – *PRHA officers provide security services for PRHA.*

**(18) Making services available to the general public.** If a worker makes his or her services available to the general public on a regular and consistent basis, the worker may be an independent contractor. - *PRHA security officers do not make their services available to the general public.*

**(19) Right to discharge.** The employer's right to discharge a worker is a factor indicating that the worker is an employee. – *PRHA security officers may be discharged, with or without cause.*

**(20) Right to terminate.** If the worker can quit work at any time without incurring liability, the worker is generally an employee. - *PRHA security officers have no liability exposure if he or she decides to resign from their respective position. They are not contractually bound to complete any tasks regarding their relationship with and work for PRHA.*
*\*See. 26 C.F.R. § 31.3121(d)-1.*

**SECTION - III**
- **Presumption.** Any individual who performs services for remuneration is presumed to be an employee, unless the company can prove the individual is an independent contractor pursuant to IRS guidelines (these guidelines, described at 26 C.F.R. 31.3121(d)(1), focus on the level of control the business exercises over the individual, broken into considerations of (1) behavioral control; (2) financial control; and (3) the type of relationship).
- **Private right of action.** Employees may sue in court for "knowing" misclassifications and can recover wages, salary, reasonable attorneys' fees, costs, and "employment benefits, including expenses incurred by the

7

employee that would otherwise have been covered by insurance." This latter provision could be significant if an individual incurs a major medical expense while serving as an independent contractor.

- **Public enforcement and debarment.** The Department of Labor and Industry is also authorized to enforce this law. In addition to civil penalties, upon two or more misclassification violations, the employer and "any firm, corporation, or partnership in which the employer has an interest" will be **debarred** for one year (or two years for a third or subsequent offense) from contracts with all Virginia "public bodies and covered institutions."

- **Anti-retaliation.** The law prohibits retaliation against an individual who has reported or "plans to report" a misclassification or is requested or subpoenaed by an appropriate authority regarding a misclassification investigation, hearing, inquiry, or court action. Retaliation claims are enforced by the Commissioner, who may seek reinstatement, lost wages, and a civil penalty equal to lost wages.

- **Private right of action.** Employees may sue directly in court without filing an administrative charge and may obtain: injunctive relief; reinstatement; lost wages, benefits, and other remuneration, plus interest; and reasonable attorneys' fees and costs.

## SECTION IV – Declarations

- **Whistleblower Status:** I hereby claim whistleblower status and affirm my rights thereunto. **See Virginia Code § 2.2-3011**

- **Protected Class:** I am a service-connected disabled veteran of the United States Military. I hereby affirm my rights as a member of that protected class. **See 38 U.S. Code § 4212**

## SECTION V – EXPECTATION

Going forward I expect;

1. That I will be instated as a full-time, regular employee of PRHA, and,

2. That I will be treated fairly and be afforded the same privileges, benefits, and protections as any other employee, and,

3. That I not be retaliated against for making this complaint, and

4. That I will be compensated for my employment at a rate commiserate with the amount of compensation that I have been receiving. If salary, that annual salary would be determined by using the average monthly compensation received by me from PRHA for the past 3 months, multiplied by 4. If hourly, the hourly rate would remain the same and the hours would not be reduced below my average hours per week over that same period, and,

Carman000008

5. That I will be compensated for any and all unpaid employer contribution to which I would have been entitled toward my VRS retirement, and,

6. That all un-withheld federal and state withholdings be paid, and,

7. That I will be compensated for any and all unpaid vacation pay, unpaid overtime earnings, paid time off, holiday pay, etc., that would be enjoyed by any other employee, and,

8. That I receive payment of any and all benefits, monies, and other things of value, to which a regular full-time employee would have received during the period between September 1, 2022, and the date of reinstatement.

In closing, please know that it is my desire to resolve this matter without litigation. However, if necessary, I am prepared to utilize every remedy available to me at law or in equity. I will await your response. If I have not heard from you before February 19th, 2022, I will be left with no alternative than to formalize my complaint through the courts, the IRS, the United States Department of Labor, The Virginia Department of Labor and Industry, et.al.

Very Truly Yours,

Mark Carman

## Resources

- United States Department of Labor:
    - https://www.dol.gov/agencies/whd/workers
- Virginia Department of Labor and Industry:
    - https://www.virginia.gov/agencies/department-of-labor-and-industry/
- Internal Revenue Service:
    - https://www.irs.gov/businesses/small-businesses-self-employed/independent-contractor-self-employed-or-employee
- Virginia Overtime Wage Act:
    - https://www.hirschlerlaw.com/newsroom-publications-1686
- Virginia Department of Human Resources Management:
    - https://www.dhrm.virginia.gov/docs/default-source/hr/210525_va_ot_act_memorandum_final.pdf

Carman000009

- Code of Virginia, Chapter 19. Worker misclassification.
    - https://law.lis.virginia.gov/vacodefull/title58.1/chapter19/

Regards,

Mark Carman
Security Programs & Risk Management Officer
Portsmouth Redevelopment and Housing Authority
3116 South Street, Portsmouth, VA 23707
C. 757-746-2617
www.prha.org
mcarman@prha.org



Carman000010